IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BRASS JAR, INC., a Nevada corporation, | JURY TRIAL DEMANDED |
| Plaintiff,<br><br>v. | Case No.: ____________ |
| AMAZON.COM, INC., a Delaware corporation, AMAZON MGM STUDIOS LLC, a Delaware limited liability company, AMAZON TECHNOLOGIES, INC., a Nevada corporation, and AMAZON SERVICES, INC., a Nevada corporation,<br><br>Defendants. | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, BRASS JAR, INC. ("Plaintiff" or "Brass Jar"), through its undersigned attorneys, for its Complaint against Defendants AMAZON.COM, INC. (“ACI”), a Delaware corporation, AMAZON MGM STUDIOS LLC (“AMSL), a Delaware limited liability company, AMAZON TECHNOLOGIES, INC., a Nevada corporation and AMAZON SERVICES, INC., a Nevada Corporation (collectively, ACI and AMSL are "Amazon" or “Defendants”, and individually, each is a “Defendant”), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for trademark infringement, false designation of origin, trade dress infringement, unjust enrichment and unfair competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended (the "Lanham Act"), and related claims under the statutory and common law of the State of Florida, arising from Defendants’ unauthorized use of Plaintiff's DRUNK SHAKESPEARE® and DRUNK® trademarks and Plaintiff's protectable trade dress in connection with the production, distribution, marketing, advertising, promotion, and streaming of

Defendants' television series *Off Campus* ("*Off Campus*") which is based on a series of novels by Elle Kennedy, and which debuted on Defendants' video streaming service in May, 2026 when all the episodes of its first season were distributed via Defendants' Amazon Prime platform and other services at one time .

2. Plaintiff is the producer of the internationally renowned live theatrical production Drunk Shakespeare®, which combines Shakespearean performance with alcohol consumption in an intimate, sophisticated, up-market, professionally staged setting. Plaintiff currently produces productions in New York, Chicago, Washington, D.C., Phoenix, Los Angeles and Houston, and offers additional DRUNK-branded productions including DRUNK® ROMEO & JULIET, DRUNK® DRACULA, DRUNK® PIRATES, and DRUNK® CHRISTMAS CAROL (collectively, the "Brass Jar Productions").

3. On information and belief, ACI has operated in the United States and the State of Florida since July 1995, as a premier shopping destination in Florida, across the United States, and internationally. On information and belief, ACI operates and owns warehouses in the State of Florida, has employees located in offices in the State of Florida including in Miami-Dade County, and flies airplanes into Miami-Dade County's Miami International Airport that are laden with goods to be delivered to customers across Florida; the majority owner of ACI, Jeff Bezos, is a resident of Miami-Dade County.

4. On information and belief, millions of consumers in Florida use ACI's services to purchase a wide range of products across dozens of product categories from Amazon and its authorized third-party sellers, and to view films and series created by and for Amazon by third parties and AMSL. Amazon has stated that it has created and uses a uniform set of contract terms,

conditions, policies and guidelines that govern how third-party sellers interact with customers via its platforms and tools.

5. On information and belief, Amazon Prime ("Prime") is a subscription video streaming service that ACI has offered to consumers, including consumers in the State of Florida, since at least 2006 when it launched as Amazon Unbox.

6. On information and belief, AMSL, or Amazon Studios, LLC (aka Amazon MGM Studios, LLC), is a Delaware limited liability company.

7. On information and belief, AMSL operates and owns "Prime Video" which it describes as a premium streaming service that offers customers a vast collection of TV shows and movies including Amazon Originals, and allows customers to buy new release movies and TV box sets on the Prime Video Store, which is available in over 240 countries and territories worldwide, including the United States and the State of Florida.

8. On information and belief, AMSL has employees located in offices in the State of Florida including in Miami-Dade County, and produces films and television series in Miami-Dade County, Florida, which are distributed in the United States and worldwide. These productions include the series M.I.A. which is filed in South Florida, and which debuted on AMSL in 2026.

9. On information and belief, Amazon protects its trademarks, including in litigation such as Case 2:19-cv-01688-JLR which was filed in the Western District of Washington in October, 2019, against Online Secrets, Inc. and others.

10. On information and belief, Defendants collaborated with Florida bookstores to host watch parties for *Off Campus* in May, 2026.

11. Episode Four of Season One of *Off Campus*, titled "The Breakup" (hereinafter, "Episode Four") and released by Defendant on Amazon Prime Video on dozens of countries

around the world on May 13, 2026, features an extended sequence set at a fictional college "Drunk Shakespeare" production, together with multiple lines of dialogue referencing "Drunk Shakespeare," without Plaintiff's authorization or consent.

12. Defendants' unauthorized use of Plaintiff's DRUNK SHAKESPEARE® and DRUNK® marks, and of aspects of Plaintiff's trade dress, within the program, and in the marketing and promotion thereof, and on merchandise related thereto, has caused and is likely to continue to cause confusion – including reverse-confusion -- mistake, and deception among consumers as to the source, sponsorship, or affiliation of Defendants' *Off Campus* series and Plaintiff's Brass Jar Productions.

13. Defendants branded the college students' amateur production within its *Off Campus* series as "DRUNK SHAKESPEARE" or as a "DRUNK SHAKESPEARE" production or event.

14. Such branding and usage, and the promotion thereof by Defendants, was without Plaintiff's consent.

15. Defendants' actions are ongoing and continuing.

16. Plaintiff seeks entry of a permanent injunction and an award of Defendants' profits, actual damages, enhanced damages, statutory damages, and other related relief.

**THE PARTIES**

17. Plaintiff Brass Jar, Inc. is a Nevada corporation with a registered agent at 500 N. Rainbow Blvd. Ste. 300 A, Las Vegas, NV 89107, USA, and its principal place of business at 35 W 39th St, New York, NY 10018. Plaintiff is the creator, owner, and producer of the Drunk Shakespeare® theatrical production and other DRUNK-branded productions, and is the exclusive owner of all rights, title, and interest in and to the DRUNK SHAKESPEARE® and DRUNK® trademarks described herein.

18. On information and belief, Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.

19. On information and belief, Amazon Technologies, Inc. is a Nevada corporation, with its principal place of business in Seattle, Washington, which markets products and provides video services including but not limited to *Off Campus* to Florida consumers, including consumers in the Southern District of Florida.

20. On information and belief, Plaintiff Amazon Services, LLC is a Nevada limited liability company with its principal place of business in Seattle, Washington which markets products and provides video services including but not limited to *Off Campus* to Florida consumers, including consumers in the Southern District of Florida.

21. On information and belief, Defendant Amazon MGM Studios LLC is a Delaware limited liability company that produces, owns, and/or distributes original television programming for Amazon Prime Video, including the series *Off Campus*, and conducts substantial business throughout the United States, including in the Southern District of Florida, via the streaming and marketing of *Off Campus* to Florida consumers, including consumers in the Southern District of Florida.

**JURISDICTION AND VENUE**

22. Plaintiff's claims are predicated upon the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, et seq., and related claims under the statutory and common law of the State of Florida.

23. This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), (b).

24. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

25. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so intertwined with the claims arising under the Lanham Act as the state law claims form part of the same case or controversy.

26. This Court has personal jurisdiction over Defendant because, On information and belief, Defendant transacts substantial business in Florida and in the Southern District of Florida, including by streaming, marketing, advertising, and promoting the infringing *Off Campus* series to consumers in the Southern District of Florida via Amazon Prime Video, by operating Amazon.com's e-commerce platform and fulfillment and distribution operations within Florida and the Southern District of Florida, and because Defendants have committed, and continues to commit, acts of infringement giving rise to this action in the Southern District of Florida.

27. Venue is proper under 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in the Southern District of Florida with respect to this action, and because a substantial part of the events giving rise to Plaintiff's claims, including the streaming, marketing, and advertising of the infringing content, occurred in the Southern District of Florida.

28. This Court has personal jurisdiction over Defendants, as each has conducted business activities in and directed to Florida, and are primary participants in infringing acts in and directed to Florida and residents of and visitors thereto.

## **GENERAL ALLEGATIONS**

29. Since 2014, Plaintiff has continuously produced and promoted the Drunk Shakespeare® theatrical production, in which five professional actors perform as members of "The Drunk Shakespeare Society," with one actor consuming five shots of whiskey before performing a leading role in a Shakespearean classic, while the remaining sober actors improvise – with audience participation -- to keep the production on track.

30. The first Drunk® production was a production of DRUNK SHAKESPEARE® that was mounted in New York City in 2014, and apart from a brief hiatus during the COVID-19 pandemic, as required by New York City laws, Brass Jar has continuously produced the Brass Jar Productions in New York City and elsewhere in the United States. The various DRUNK® Brass Jar Productions have been attended by over a million patrons across six cities.

31. Plaintiff's Drunk Shakespeare® productions are staged in intimate, hidden, speakeasy-style venues featuring luxury furnishings, a library setting, and high-quality craft cocktails that are both served from a bar and delivered to patrons' seats throughout the approximately 90-minute performance, with ticket prices of up to $500.

32. Plaintiff is set to present over 2,500 DRUNK® branded performances in 2026 alone across its DRUNK SHAKESPEARE®, DRUNK® DRACULA, DRUNK® PIRATES, DRUNK® ROMEO & JULIET and DRUNK® CHRISTMAS CAROL productions, including in Los Angeles, where performances begin in the fall of 2026, and Plaintiff anticipates expanding to twenty theaters by 2028.

33. Plaintiff is the owner of U.S. Trademark Registration No. 7,212,008 for the standard-character mark DRUNK SHAKESPEARE, registered on the Principal Register on November 7, 2023, for "Theatre productions" in International Class 41, with a first use date of March 26, 2014. A true and correct copy of the registration certificate is attached as Exhibit 1.

34. Plaintiff is the owner of U.S. Trademark Registration No. 7,633,184 for the standard-character mark DRUNK, registered on the Principal Register on December 31, 2024, for a range of theatrical entertainment services in International Class 41, including "[d]irecting of theatrical shows," "[e]ntertainment in the nature of theater productions," "[e]ntertainment services in the nature of live theatrical productions, theatrical shows provided at performance venues,

theatrical productions accompanied by bar service, theatrical productions accompanied by wine and beer performances," and "[t]heatre productions," with a first use date of March 16, 2014. A true and correct copy of the registration certificate is attached as Exhibit 2.

35. Plaintiff is the owner of U.S. Trademark Registration No. 7,633,186 for the stylized mark DRUNK, consisting of the word "DRUNK" in capital letters in a slightly wavy serif font, registered on the Principal Register on December 31, 2024, for the same International Class 41 theatrical entertainment services identified in the preceding paragraph, with a first use date of March 16, 2014. A true and correct copy of the registration certificate is attached as Exhibit 3.

36. All such registrations are valid and subsisting, in full force and effect, and constitute prima facie evidence of the validity of the registered marks, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks in commerce in connection with the services specified in the registrations, pursuant to 15 U.S.C. § 1057(b) (collectively, the DRUNK SHAKESPEARE® and DRUNK® registrations are the "Registered Marks").

37. Plaintiff also holds a WIPO registration for its DRUNK marks at Registration No. 1826878, and has a pending trademark application in Canada.

38. Plaintiff has long had a Code of Conduct for patrons of the Brass Jar Productions, which is accessible via https://drunkshakespeare.com/code-of-conduct/, and which states that only those over twenty one years old with a valid ID can attend a Brass Jar Production, and asks that attendees please "drink responsibly".

39. Plaintiff has also long stated on its website, and in its production policies, that performers in Brass Jar Productions are "on a regular rotation system and are carefully monitored at all times." Plaintiff also has stated since performances began in 2014 that "Drinking in moderation can be fun. Drinking to excess can ruin your life. We promote healthy drinking."

40. In addition to its registered rights, Plaintiff owns protectable trade dress in the distinctive design, décor, and staging of the venues in which the Brass Jar Productions are performed, consisting of the distinctive combination of the registered mark DRUNK SHAKESPEARE, the bar-incorporating speakeasy-style venue, library-style décor and plush furnishings, and intimate "in the round" runway-style staging in which professional actors perform classic theatrical works accompanied by bar service that includes specialty cocktails (the "Trade Dress") all of which are non-functional and serve to identify Plaintiff as the source of the Brass Jar Productions (the Trade Dress, the Registered Marks and Plaintiff's common law trademark rights, are the "Asserted Marks").

41. Plaintiff's Drunk Shakespeare® productions have received substantial and favorable media recognition, having been described by Slate Magazine as "the best thing to ever happen to the theatre" and by The New York Times in 2016 as "considerably more fun than many Shakespeare productions, worth experiencing not to watch an actor get drunk, but to watch a cast juggle so many balls so adroitly."

42. Plaintiff markets and promotes the Brass Jar Productions, including through its website at drunkshakespeare.com, which advertises Plaintiff's productions in New York City, Chicago, Washington, D.C., Phoenix, Los Angeles, Houston, and Dallas, and through Plaintiff's social media channels, as well as through advertisements on third party websites and platforms including Instagram and Threads, and has been the recipient of extensive news coverage for at least the past ten years, including in *The New York Times*.

43. Plaintiff's Instagram account at https://www.instagram.com/drunkshakespeare/ has, as of September 9, 2026, 38.6 thousand followers.

44. As a result of Plaintiff's continuous, extensive, and exclusive use of the Asserted Marks since 2014, the Asserted Marks – which are distinctive – are uniquely associated with Plaintiff and the Brass Jar Productions in the minds of consumers, and have acquired substantial goodwill and secondary meaning.

45. Plaintiff has expended substantial time, money, and resources developing, marketing, advertising, and otherwise promoting the Asserted Marks and the Brass Jar Productions offered thereunder.

46. Defendant Amazon MGM Studios produces and distributes the television series *Off Campus*, a college romantic drama based on the best-selling Off-Campus book series by author Elle Kennedy, which debuted on Amazon Prime Video on May 13, 2026.

47. Amazon is well aware of the importance of trademarks as an indicator of source, and has stated that – in connection with product sales through its Amazon.com platform – that a requirement for "accurate and complete" product listings is incorporated into the "Selling on Amazon Service Terms" section of the seller agreements.

48. The first Elle Kennedy book in the Off-Campus book series is entitled "The Deal", and was originally published in 2015. There are no sequences in "The Deal" which take place at a production or performance of any of Shakespeare's plays, nor is there any mention of "Drunk Shakespeare" in "The Deal".

49. A 2024 article in *Deadline* about Amazon's acquisition of the Kennedy series stated that the five books in "Kennedy's *Off-Campus* series … depict[] the elite ice hockey team, and the women in their lives, as they grapple with love, heartbreak, and self-discovery—forging deep friendships and enduring bonds while navigating the complexities that come with transitioning into adulthood."

50. Elle Kennedy holds a trademark registration for the mark OFF-CAMPUS for downloadable and printed books, which is at Reg. No. 7314488 (the "Kennedy Registration").

51. On information and belief, Defendants have been licensed the Kennedy Registration by Elle Kennedy for use in connection with the *Off Campus* program produced and distributed worldwide by Defendants, and licensed by Defendants to third parties for use on merchandise such as Funko Pops, and clothing sold through Hot Topic, an American retail store.

52. *Off Campus* has been an outsized commercial success for Defendant. According to Defendants' own reporting, *Off Campus* reached 36 million viewers in its first twelve days of release which is a figure exceeded among Defendants' original series only by *The Lord of the Rings: The Rings of Power* and *Fallout*, and on information and belief, *Off Campus* achieved the largest debut among the 18-34 demographic in the history of Amazon Prime.

53. On information and belief, Defendants released all eight episodes of *Off Campus* on May 13, 2026.

54. Episode Four of Season One of *Off Campus*, titled "The Breakup," depicts an extended sequence in which several of the principal characters attend a fictional, amateur, collegiate theatrical event that is given the moniker "Drunk Shakespeare" by the characters, including those performing in said production (the "OC DS"). Performers and audience members consume alcohol during the OC DS production, which is an amateur/student produced performance of Shakespeare's *A Midsummer Night's Dream* that incorporates on-stage audience participation, and a choreographed dance sequence, and which – in the narrative -- is apparently marketed to students and other attendees "Drunk Shakespeare."

55. For example, one of the OC DS cast members says, “Now, virgins oft find Drunk Shakespeare scary…” during Episode Four, and that dialogue is also visible on the screen when closed captioning in English is turned on.

56. Such use within the context of *Off Campus* manifests as a use of DRUNK SHAKESPEARE as a trademark within the fictional *Off Campus* universe and narrative, and thus, Defendants are using said trademark as a trademark, and as an identifier of source.

57. Such use within the context and narrative of *Off Campus* is – to the characters in the show – an indicator of source, with a distinct commercial impression.

58. Such use – to the viewers of *Off Campus* and those who view Marketing Materials about the show – has a distinct commercial impression to those viewers and the general public, wherein “Drunk Shakespeare” performs a trademark function to those individuals.

59. Identifiers of source include the episode summaries, within the closed captioning, and as the expressive name of and moniker for an in-show, in-world event.

60. On information and belief dozens – if not hundreds -- of articles, influencer stories, media reports, social media posts and other media coverage of *Off Campus* reference and/or refer to the Shakespeare production included in Episode Four as “Drunk Shakespeare”.

61. On information and belief, Defendants marketed *Off Campus* by hosting press junkets, providing merchandise and signage to bookstores and influencers, organizing “Obsessed Fest”, an event attended by the general public in Los Angeles on June 27, 2026 that was livestreamed on TikTok for global audiences, releasing interviews Defendants conducted themselves with the cast, producers, writers and crew, and distributing releasing interviews that third parties conducted with the cast, producers, writers and crew (the “Marketing Materials”)

where such Marketing Materials reach largely the same target audience and/or demographic as Plaintiff's patrons.

62. On information and belief, Defendants included specific mentions of and references to OC DS within the Marketing Materials.

63. Defendants' use of DRUNK SHAKESPEARE in *Off Campus* and the Marketing Materials functions as a designation of source for Defendants' services including its video distribution services.

64. "Drunk Shakespeare" is showcased prominently by Defendants in Episode Four and Marketing Materials related thereto, which were widely distributed on Defendants' own platforms, and through social media accounts owned and/or used by cast members and sponsors of *Off Campus* including but not limited to Liquid I.V.

65. In the Marketing Materials that were distributed by Defendants on the show's official Instagram account at @offcampusprime (the "Official Instagram Account"), including at www.instagram.com/reel/DY0J24-FGvA/ (the "May 26 Instagram Post") Defendants' cast members specifically mentioned the "Drunk Shakespeare" sequence, as one says, "During Drunk Shakespeare which is Episode Four…"

66. Members of the public left the following comments on the Official Instagram Account's May 26 Instagram Post:

"I want to go to a drunk Shakespeare now"

"Honestly drunk Shakespeare was sooo funnn… i wanted to actually experience itt!"

"Drunk Shakespeare is outrageously fun I have to say"

"I love drunk Shakespare!!!!"

"I loved Drunk Shakespeare!!!"

"I wanna play drunk Shakespeare"

"We all loved drunk Shakespeare too especially for that dance off"

"Omg I went to a @drunkshakespeare and it was such a time!"

"Drunk Shakespeare was so fun in the show"

"Drunk Shakespeare was such a fun addition!!!"

"It made us all want to go to Drunk Shakespeare!!!"

67. On information and belief, Episode Four includes six mentions of "Drunk Shakespeare".

68. Fans refer to certain sequences in Episode Four of *Off Campus* using Plaintiff's Registered Marks including on the Reddit forum focused on *Off Campus* at https://www.reddit.com/r/offcampustv/comments/1ukfd3r/i_am_never_getting_over_them/ where one individual posted "This and the FULL DANCE VIDEO! He said the viral clip is a little part of the whole dance i want the whole dance!" and another person responded, "Dance ? Did you mean the drunk shakespeare ?" and the original poster said, "Yesss".

69. On or about May 24, 2025, actor Stephen Kalyn ("Kalyn") who played Dean Di Laurentis in *Off Campus*, posted a video entitled "BTS Drunk Shakespeare" to his personal TikTok account at https://www.tiktok.com/@stephenkalyn/video/7643657694049602834 - a true and accurate printout of a screenshot of this video is attached hereto as Exhibit 4.

70. On information and belief, Kalyn filmed the video with the knowledge and consent of Defendants, and shared it with the knowledge and consent of Defendants.

71. On information and belief, photographs of *Off Campus* sets have been shared, with the knowledge and consent of Defendants, by production designer Dan Hermansen, including at https://danhermansen.myportfolio.com/off-campus-season-1 (the "Hermansen Photos").

72. The Hermansen Photos include a description of the set from Episode Four as the "Drunk Shakespeare" sets, Exhibit 5.

73. The Hermansen Photos associate "Drunk Shakespeare" with Defendants and *Off Campus* in a manner that infringes on Plaintiff's rights, and causes confusion among the public including through submitting inaccurate information to search engines and AI training databases.

74. On information and belief, Amazon has submitted, or permitted the submission of, content about Episode Four of *Off Campus* into artificial intelligence training systems and databases.

75. On information and belief, such content has resulted in AI databases and large language models including but not limited to Google's Gemini search engine providing wildly inaccurate information to those searching for information about *Off Campus*, as shown in Exhibit 6, where the search result for a query about a "behind the scenes of Drunk Shakespeare" video shared by actor Stephen Kalyn, addressed in Paragraphs 69-70, caused Google's AI Overview to state, "Stephen Kalyn shared a viral look behind the scenes involving his time or association with the popular interactive show Drunk Shakespeare…"

76. Kalyn has never been a cast member for Plaintiff's Brass Jar Productions.

77. Google's search engine describes Plaintiff's DRUNK SHAKESPEARE® production as a "popular interactive show".

78. On information and belief, Amazon owns and creates content for IMDB.com ("IMDB").

79. On information and belief, the summary of *Off Campus* that is hosted on and displayed to the public through IMDB at https://www.imdb.com/title/tt33546863/?ref_=fn_t_1

says, “Hannah and Garrett get closer than either anticipated and things get messy when they're forced to confront their feelings at Drunk Shakespeare.”

80. The closed captioning for *Off Campus* presents “Drunk Shakespeare” with initial capitalization throughout the episode.

81. The episode summary for Episode Four that is included on Amazon’s website at https://www.amazon.com/gp/video/detail/B0GXSDJ3FD makes specific mention of “Drunk Shakespeare”, and reads as follows: Hannah and Garrett get closer than either anticipated and things get messy when they’re forced to confront their feelings at Drunk Shakespeare.

82. Episode Four contains multiple express verbal references by the characters to "Drunk Shakespeare," using that name to identify the in-show fictional event, and depicts theatrical elements including a "dance battle," "in the round" runway-style staging surrounded by three tiers of seats, and use of modern language, which are evocative of Plaintiff's Drunk Shakespeare® productions and Trade Dress.

83. Defendants did not seek or obtain Plaintiff's permission, consent, or a license to use the DRUNK SHAKESPEARE® or DRUNK® marks, or to incorporate any aspect of Plaintiff's Trade Dress, in *Off Campus*.

84. Following the May 13, 2026 release of Episode Four, members of the general public expressed confusion on social media as to the relationship between *Off Campus* and Plaintiff's genuine Drunk Shakespeare productions, including posts asking whether "Drunk Shakespeare" is a real production, expressing a desire to attend a "real life Drunk Shakespeare" after watching *Off Campus*, and discussing their own attendance at Plaintiff's productions, including "Drunk Romeo & Juliet," in the context of discussing *Off Campus* Episode Four.

85. On information and belief, Amazon entered into promotional and marketing relationships with brands such as Liquid I.V., TRESemmé, Rare Beauty, and Verizon in connection with *Off Campus.*

86. *Off Campus* features an extensive brand-integration partnership with Liquid I.V., a Unilever-owned electrolyte drink brand, developed together with Amazon Ads' Brand Innovation Lab (the "Liquid IV Partnership").

87. On information and belief, Defendants' Liquid IV Partnership marks the first time lead talent from a show produced by Defendants appeared in a co-branded advertisement for a partner brand.

88. On information and belief, the Liquid IV Partnership includes a campaign that incorporates repeated on-screen product placement, a stylized in-character advertisement featuring the series' lead actors, a co-branded Feature Rotator on the Fire TV interface, and a dedicated landing page.

89. Public commentary analyzing the Liquid I.V./*Off Campus* brand partnership has described viewers who engage with elements referenced in the series, including its in-show "Drunk Shakespeare" event, as participating in the fictional universe of the show's characters, Hannah and Garrett, further increasing the likelihood that consumers would perceive Plaintiff's Drunk Shakespeare productions as affiliated with, sponsored by, or otherwise connected to *Off Campus* and its brand partners.

90. On information and belief, in May, 2026, influencer and commentator Keely McLaughlin created and distributed a video and other comments on social media including at https://www.facebook.com/ramblinnkeelz/videos/sooo-this-off-campus-event-totally-needs-to-happen-let-this-be-an-informal-petit/3325733500940940/ which tagged "#drunkshakespeare" as

well as @primevideo and @offcampusprime (the "KML Post"), in which she reported on "how much excitement there is around this series, especially about moments like the Drunk Shakespeare bit."

91. In the KML Post, McLaughlin also suggested that Liquid IV and Prime Video could host "live Drunk Shakespeare performances" in pop-up contexts.

92. On May 23, 2026, an individual using the account name *betterthanbasicivy* posted on the Threads social media platform with the following: "I think the biggest takeaway from Off Campus is that people are literally begging for Drunk Shakespeare to be a think. @liquidiv maybe consider some aftercare packages, cause this is about to pop off." (the "Ivy Post")

93. Also on May 23, 2026, the official Liquid IV account on the Threads social media platform responded to the Ivy Post with "let's us know when and where". Said post is located at https://www.threads.com/@liquidiv/post/DYtLo0Cm4e0. Exhibit 7.

94. While various third parties responded to the Ivy Post with statements about Plaintiff's productions, on information and belief, the writer of the Ivy Post was likely to be confused by the OC DS, and LiquidIV, a partner of Defendants, augmented the confusion expressed by the writer of the Ivy Post.

95. On information and belief, *Off Campus* is a well-financed, heavily promoted, and widely viewed commercial television production created and/or distributed/marketed by Defendants.

96. Defendants' use of DRUNK SHAKESPEARE and DRUNK marks occurred in a well-financed, heavily promoted, and widely viewed commercial television production and its associated brand-partnership advertising, disseminated nationally, including in the Southern District of Florida, via Amazon Prime Video and Defendants' affiliated marketing channels, in a

manner that ensured that the media and general public would come to associate "DRUNK SHAKESPEARE" with Amazon, Amazon Prime and/or *Off Campus*, and not with Plaintiff.

97. Defendants' use of components of Plaintiff's Trade Dress were included in a well-financed, heavily promoted, and widely viewed commercial television production and its associated brand-partnership advertising, disseminated nationally, including in the Southern District of Florida, via Amazon Prime Video and Defendants' affiliated marketing channels.

98. On information and belief, Defendants, who include and constitute a sophisticated media company with access to legal and clearance resources, had the ability to search the United States Patent and Trademark Office's ("USPTO") trademark register prior to the production and release of *Off Campus*, and if Defendants chose not to perform such a search, such choice was reckless and irresponsible.

99. On information and belief, a search by Defendants search of the USPTO register would have disclosed Plaintiff's ownership of rights in the DRUNK SHAKESPEARE and DRUNK marks in connection with theatrical productions, including theatrical productions accompanied by bar service.

100. By letter dated June 3, 2026 (the "June 3 Letter") Plaintiff's counsel notified Defendant Amazon of Plaintiff's rights in the Asserted Marks and requested that the parties discuss a resolution of Plaintiff's concerns regarding *Off Campus*'s unauthorized use of Plaintiff's marks and Trade Dress.

101. Counsel for Defendant Amazon responded in a letter that included an extensive discussion of why Defendants' program did not infringe on Plaintiff's copyright, despite Plaintiff making no allegation in the June 3 Letter that *Off Campus* was infringing on Plaintiff's copyright.

102. Plaintiff annually spends significant time, money, and effort advertising and promoting its Brass Jar Productions which use the DRUNK® and DRUNK SHAKESPEARE® marks. Through a dozen years of use of the marks for the Brass Jar Productions, Plaintiff has developed a reputation for quality theatrical experiences.

103. Defendants' unauthorized use of Plaintiff's valuable, registered DRUNK SHAKESPEARE® and DRUNK® marks and Plaintiff's Trade Dress has caused, and is likely to continue to cause, confusion, reverse confusion, mistake, and/or deception among consumers as to the source, sponsorship, or affiliation of *Off Campus* and its associated brand partnerships, and Plaintiff's Brass Jar Productions, and explicitly misleads the public in connection therewith.

104. Defendants' conduct has damaged and will continue to damage Plaintiff's ability to control the use of its Asserted Marks and to license the Asserted Marks and Plaintiff's productions for use in other media, and has caused and threatens to continue causing irreparable harm to Plaintiff's goodwill and reputation for which Plaintiff has no adequate remedy at law.

105. Plaintiff has retained the undersigned counsel and is obligated to pay reasonable attorneys' fees in connection with this action.

**COUNT I**

**Federal Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)**

106. Plaintiff adopts, repeats, and realleges each and every allegation previously set forth in paragraphs 1 through 105 above as if set forth fully in this paragraph.

107. Plaintiff is the sole and exclusive owner of the Registered Marks and the common law rights therein. Each of the trademark registrations relating to the Registered Marks are valid, subsisting, in full force, enforceable and in effect.

108. Plaintiff's Registered Marks, as used by Plaintiff in connection with its theatrical productions, are inherently distinctive and/or have acquired secondary meaning.

109. Plaintiff has not granted any license to Defendants of or for the Registered Marks.

110. Defendants have used, without Plaintiff's consent, marks that are identical or confusingly similar to Plaintiff's Registered Marks, in connection with the production, distribution, marketing, and promotion of *Off Campus*, and in the marketing thereof including in the Marketing Materials, in commerce in the United States, including in Florida, and with and to various foreign countries.

111. Defendants' unauthorized use in commerce of the DRUNK SHAKESPEARE and DRUNK marks in *Off Campus* and marketing/promotional materials created therefor and connected therewith including the Marketing Materials is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of *Off Campus*, and is likely to cause consumers to believe, contrary to fact, that *Off Campus*, or the fictional "Drunk Shakespeare" event depicted therein, is sold, authorized, endorsed, sponsored by, or affiliated with Plaintiff, or that Plaintiff's Brass Jar Productions are owned and/or authorized by Defendants, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

112. Defendants prominently display the Registered Marks within the Marketing Materials in a manner that promotes Defendants' *Off Campus* show, in an explicitly misleading manner.

113. Defendants have made use of the Registered Marks without Plaintiff's authorization in order to misleadingly promote *Off Campus* and market/promote the brands associated therewith including Liquid I.V., as affiliated with, sponsored by or licensed by Brass Jar.

114. In the alternative, Defendants' use of the Registered Marks is explicitly intended and highly likely to confuse and mislead the public into believing that the Brass Jar Productions are affiliated with, sponsored by, licensed by, created by or owned by Amazon.

115. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff and to its goodwill and reputation, and to Plaintiff's business, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court.

116. Plaintiff has no adequate remedy at law.

117. Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, disgorgement of Defendants' profits, enhanced damages, reasonable attorneys' fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT II**

**Federal False Designation of Origin and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

118. Plaintiff adopts, repeats, and realleges each and every allegation previously set forth in paragraphs 1 through 105 above as if set forth fully in this paragraph.

119. Defendants' unauthorized use in commerce of the valid, subsisting, enforceable and in effect DRUNK SHAKESPEARE and DRUNK marks is designed by Defendants to, and is likely to, deceive consumers as to the origin, source, sponsorship, or affiliation of *Off Campus*, including through reverse confusion, and is likely to cause consumers to believe, contrary to fact, that *Off Campus* is sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants and the Brass Jar productions are affiliated with or sponsored by Plaintiff.

120. Defendants' unauthorized use in commerce of Plaintiff's marks constitutes use of a false designation of origin, and a misleading description and representation of fact that is explicitly misleading.

121. On information and belief, Defendants' conduct is likely to cause confusion, mistake, reverse confusion and/or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

122. Defendants' conduct constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

123. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff and to its goodwill and reputation, and to its business, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court, for which Plaintiff has no adequate remedy at law.

124. Defendants have profited from its wrongful conduct.

125. Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, disgorgement of Defendants' profits, enhanced damages, reasonable attorneys' fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest, and permanent injunctive relief.

**COUNT III**

**Federal Trade Dress Infringement Under Lanham Act Section 43(a) 15 U.S.C. § 1125(a)**

126. Plaintiff adopts, repeats, and realleges each and every allegation previously set forth in paragraphs 1 through 105 above as if set forth fully in this paragraph.

127. Plaintiff's Trade Dress, consisting of the distinctive combination of the registered mark DRUNK SHAKESPEARE, the bar-incorporating secret speakeasy-style venue, library-style

décor and plush furnishings, three tiers of seating, and intimate "in the round" runway-style staging in which professional actors perform classic theatrical works accompanied by bar service that includes specialty cocktails, is inherently distinctive and/or has acquired secondary meaning, and is non-functional as a whole and in combination.

128. The set design shown in the Hermansen Photos shows that the “Drunk Shakespeare” set in *Off Campus* includes a bar, an “underground scene” vibe, an “in the round” runway-style staging setup, and plush furnishings in the nature of multiple elegant chandeliers, drapery, leather chairs situated to resemble a sofa as well as a leather sofa, three tiers of seats, cushioned sofas and armchairs,

129. Defendants have copied components of Plaintiff’s Trade Dress in its *Off Campus* show, specifically in Episode Four thereof.

130. In copying Plaintiff’s Trade Dress, Defendants have mimicked Brass Jar’s overall commercial impression.

131. On information and belief, Defendants intended to derive a benefit from its actions in copying aspects of Brass Jar’s productions.

132. On information and belief, Defendants intentionally copied aspects of the Trade Dress including the Registered Trademarks from Brass Jar.

133. Defendants have used a confusingly similar imitation of elements of Plaintiff's Trade Dress in *Off Campus*, including three tiers of seating, an "in the round" runway-style staging and a comparable dance sequence, in connection with a fictional theatrical event bearing Plaintiff's DRUNK SHAKESPEARE mark.

134. Defendants' unauthorized use of a confusingly similar imitation of Plaintiff's Trade Dress is likely to cause confusion, mistake, reverse confusion and/or deception as to the source, sponsorship, or affiliation of *Off Campus* and Plaintiff's Brass Jar Productions.

135. Defendants' conduct constitutes trade dress infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

136. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff and to its goodwill and reputation, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court, for which Plaintiff has no adequate remedy at law.

137. Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, disgorgement of Defendants' profits, enhanced damages, reasonable attorneys' fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT IV**

**Common Law Trademark Infringement and Unfair Competition Under Florida Law**

138. Plaintiff adopts, repeats, and realleges each and every allegation previously set forth in paragraphs 1 through 105 above as if set forth fully in this paragraph.

139. In addition to its federal registrations, Plaintiff owns common law rights in the Asserted Marks arising from its continuous and exclusive use of the Asserted Marks since 2014.

140. Defendants' conduct as alleged herein constitutes trademark infringement and unfair competition in violation of the common law of the State of Florida.

141. Defendants' conduct has allowed Defendants to wrongfully profit from, and has injured, Plaintiff in an amount to be determined at trial, and has caused and threatens to continue causing irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

142. Defendants' conduct permits recovery of a disgorgement of Defendants' profits, damages, and costs by Plaintiff, including Plaintiff's attorneys' fees.

**COUNT V**

**Trademark Counterfeiting pursuant to 15 U.S.C. §§ 1114, 1116, and 1117**

143. Plaintiff adopts and realleges paragraphs 1 through 142 above as if fully set forth herein.

144. Plaintiff is the exclusive owner of the Registered Marks. Each of the trademark registrations relating to the Registered Marks are valid, subsisting, in full force, enforceable and in effect.

145. Each of the Registered Marks is distinctive.

146. As described above, Defendants have used the Registered Marks in commerce, without Brass Jar's consent or authorization, in an explicitly misleading manner, by using the Registered Marks to denote a play within a show, specifically, the *Drunk Shakespeare* sequence in *Off Campus*, and in Marketing Materials designed and used to market *Off Campus*.

147. Defendants use a counterfeit of Plaintiff's DRUNK SHAKESPEARE® mark because of their use of the mark DRUNK SHAKESPEARE in Episode Four of *Off Campus* without authorization.

148. Defendants use a counterfeit of Plaintiff's DRUNK SHAKESPEARE® mark because of their use of the mark DRUNK SHAKESPEARE Marketing Materials created by and/or for Defendants to market and promote *Off Campus*, without authorization.

149. Defendants' acts have caused actual confusion in the market and among the public.

150. Defendants' use of a counterfeit of Plaintiff's DRUNK SHAKESPEARE® mark is also likely to create confusion, or cause a mistake, or deceive.

151. Defendants' acts are intentional, knowing, deliberate and willful, and with actual knowledge that, or reckless disregard for whether, their conduct infringes upon Plaintiff's rights.

152. Defendants' use of a counterfeit of Plaintiff's DRUNK SHAKESPEARE® mark within Episode Four and the Marketing Materials is willful.

153. Defendants have used spurious marks that are identical to or substantially indistinguishable from the Registered Marks, which constitutes use of counterfeit marks in violation of 15 U.S.C. § 1114. As a result of such counterfeiting by Defendants, Brass Jar. is also entitled to recover attorneys' fees, treble damages, and/or statutory damages of up to $2 million per counterfeit mark per type of services sold, and pursuant to each type of good sold, if any, pursuant to 15 U.S.C. § 1117.

154. On information and belief, Defendants have engaged in such spurious use willingly and with the intent to cause confusion and/or reverse confusion with Plaintiff, and with the intent to unfairly compete with Plaintiff, to trade upon Plaintiff's reputation and goodwill, and to deceive the public that either Plaintiff's DRUNK® productions are produced or authorized by Amazon, or that Plaintiff granted a license to Amazon for Amazon to use the DRUNK SHAKESPEARE® mark in *Off Campus*, and in a manner that complicates Plaintiff's ability to protect its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

155. Defendants' acts have caused actual confusion in the market.

156. Defendants acted intentionally and with actual knowledge that, or reckless disregard for whether, their conduct infringes upon Plaintiff's rights.

157. Defendants' use of a counterfeit of Plaintiff's U.S. Trademark Registration No. 7,212,008 is willful.

158. Defendants' conduct entitles Plaintiff to a temporary and a permanent order enjoining Defendants from unauthorized use of the DRUNK SHAKESPEARE® mark pursuant to 15 U.S.C. § 1116; treble damages pursuant to 15 U.S.C. § 1117(b), or statutory damages pursuant to 15 U.S.C. § 1117(c); attorneys' fees pursuant to 15 U.S.C. § 1117(a); and any and all other relief this Court deems appropriate.

**COUNT VI**

**Violation of Florida's Deceptive & Unfair Trade Practices Act, § 501.201, et seq., Fla. Stat.**

159. Plaintiff adopts and realleges paragraphs 1 through 142 above as if fully set forth herein.

160. Defendants' conduct as alleged herein constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce in a manner than damages the consuming public and legitimate business enterprises, and has misled and is likely to continue to explicitly mislead consumers, in the State of Florida, and has caused and is likely to continue to cause a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of *Off Campus*, and is otherwise damaging to the public.

161. Defendants' conduct constitutes an unfair and deceptive act or practice in the conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq., Fla. Stat. (2026) and has caused actual, irreparable harm to Plaintiff, and will continue to cause irreparable injury to Plaintiff unless Defendants are enjoined from further misleading consumers throughout the state of Florida.

162. Defendants' conduct has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, entitling Plaintiff to injunctive relief and to recover its damages, costs, and reasonable attorneys' fees.

**COUNT VII**

**Unjust Enrichment by Defendants**

163. Plaintiff adopts and realleges paragraphs 1 through 142 above as if fully set forth herein.

164. Defendants have received a direct benefit from Plaintiff, with Defendants' knowledge, specifically, the benefit of goodwill associated with the use of the Asserted Marks.

165. Defendants voluntarily accepted and retained said direct benefit from Plaintiff, without Plaintiff's knowledge or consent.

166. Said retention of the direct benefit by Defendants is demonstrated through Defendants' ongoing use of the DRUNK SHAKESPEARE mark in Marketing Materials and promotional items and content created by or for, and distributed by, Defendants.

167. Circumstances make retention of said benefit by Defendants without payment to Plaintiff inequitable.

**COUNT VIII**

**Common Law Trademark Infringement**

168. Plaintiff adopts and realleges paragraphs 1 through 105 above as if fully set forth herein.

169. Plaintiff has acquired common law trademark rights in the mark DRUNK SHAKESPEARE in connection with a theatrical production and bar service by virtue of

approximately a dozen years of continuous promotion of its Brass Jar Productions, and consistent production of Brass Jar Productions in New York City and elsewhere in the United States.

170. Defendants' use of a mark that is the same as Plaintiff's DRUNK SHAKESPEARE mark infringes Plaintiff's common law trademark rights, and is likely to cause confusion, mistake, deception and/or reverse confusion among consumers who will believe that Defendants' activities originate from, are affiliated with, or are endorsed by Plaintiff when, in fact, they are not.

171. As a direct and proximate result of such unfair competition, Plaintiff has suffered and will continue to summer, monetary loss and irreparable injury to its business, reputation, and goodwill.

172. Defendants' conduct has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, entitling Plaintiff to injunctive relief and to recover its damages, costs, and reasonable attorneys' fees.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brass Jar, Inc. prays this Court enter judgment against Defendants, and in favor of Plaintiff:

1. Finding that Defendants' activities complained of herein are unlawful under federal and Florida law;

2. Granting an injunction permanently enjoining Defendants, their employees, agents, officers, directors, managers, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities, from:

   a. producing, distributing, streaming, marketing, advertising, promoting, or authorizing any third party to produce, distribute, stream, market, advertise,

or promote any content bearing Plaintiff's Asserted Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Asserted Marks, without Plaintiff's authorization;

b. engaging in any activity that infringes Plaintiff's rights in its Asserted Marks;

c. engaging in any activity constituting unfair competition with Plaintiff;

d. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' content is in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's productions are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant; and

e. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (d).

3. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that *Off Campus*, or any content produced, distributed, streamed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant, is in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or Plaintiff's productions.

4. Directing Defendant, under Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied therewith.

5. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with the Lanham Act (15 U.S.C. § 1117(a)) or statutory damages pursuant to 15 U.S.C. § 1117(c).

6. Directing Defendants to account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

7. Declaring this an exceptional case under Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

8. Awarding Plaintiff actual damages and any profits of Defendants attributable to the infringement.

9. Awarding Plaintiff its damages, costs, and reasonable attorneys' fees under Florida law, including the Florida Deceptive and Unfair Trade Practices Act, § 501.2105, Fla. Stat.

10. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

11. Awarding such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 17, 2026

Respectfully submitted,

SHUTTS & BOWEN LLP

/s/ *Heidi H. Tandy*
Heidi H. Tandy, Esq.
Florida Bar No. 163864
SHUTTS & BOWEN, LLP
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Telephone: (305) 329-7021
Email: HTandy@shutts.com

Counsel for Plaintiff Brass Jar, Inc.